❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 24-904M(NJ) |
| Information about the location of the cellular telephone | ) | Matter No. 2024R00312 |
| assigned call number 262-583-8168 (Target Number), | ) | |
| whose service provider is T-Mobile | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 9/27/2024 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for 30 days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/13/2024 @ 1:35 p.m. _____

City and state:   Milwaukee, WI _____

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched
### Matter No. 2024R0312

1.     Records and information associated with the cellular device assigned **262-583-8168** (referred to herein and in Attachment B as "**Target Number**"), that is in the custody or control of T-MOBILE (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan, Parsippany, NJ 07054, with no known listed subscriber.

2.     The device bearing the **Target Number.**

## **ATTACHMENT B**

### **Particular Things to be Seized**
### **Matter No. 2024R0312**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  The following subscriber and historical information about the customers or subscribers associated with the **Target Number** for the time period from August 26, 2024, to present:

    i.  Names (including subscriber names, usernames, and screen names);

    ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.  Local and long-distance telephone connection records;

    iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.  Length of service (including start date) and types of service utilized;

    vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

17

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Number**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Number** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

18

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Number** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Number**.

c. Information about the location of the **Target Number** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Number** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

19

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**   This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.    Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Miguel RODRIGUEZ and other known and unknown individuals and other unidentified subject(s) since May 1, 2024.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information about the location of the cellular telephone<br>assigned call number 262-583-8168 (Target Number),<br>whose service provider is T-Mobile | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 24-904M(NJ)

Matter No. 2024R00312

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)<br>(1), 846, and 843(b) | Distribution/Possession with Intent to Distribute Controlled<br>Substances, Conspiracy to Distribute Controlled Substances,<br>and Use of a Communication Facility in Furtherance of Drug<br>Trafficking. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TYLER OWENBY   Digitally signed by TYLER OWENBY
Date: 2024.09.11 15:15:45 -05'00'

*Applicant's signature*

Tyler Owenby, DEA SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means).*

Date: 9/13/2024 _____

*Judge's signature*

City and state:   Milwaukee, WI _____

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter No. 2024R0312**

I, Tyler Owenby, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number **262-583-8168,** (the "**Target Number**"), whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan, Parsippany, NJ 07054. The listed subscriber for the **Target Number** is unknown. The **Target Number** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the **Target Number**.

## I. INTRODUCTION AND AGENT BACKGROUND

4       I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been so employed since July 2021 and am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

5       Prior to my employment with the DEA, I spent the previous five years working as an Analyst assigned to the Columbia Missouri Police Department's Vice Narcotics and Organized Crime Unit. As part of my duties as an Analyst, I was formally trained and certified in the areas of mobile phone forensics, cell tower and phone toll analysis, and advanced open source intelligence gathering techniques.

6       I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

    a.       I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I

2

have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.

e.     I know that drug traffickers commonly have in their possession, and at their residences and other locations ("stash houses") where they exercise dominion and control, controlled substances, firearms, ammunition, drug proceeds, and records or receipts pertaining their drug trafficking;

f.     I know that drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often times members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Additionally, drug traffickers will have customers meet drug traffickers near the stash location. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person or maintain them at their residence. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made or inside their personal residence. Often time the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews.

g.     I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

3

h.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry.  I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

7.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.      The facts in this affidavit come my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.      Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10.     Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of

4

a communications facility to facilitate a drug-trafficking offense, violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b), have been committed by Miguel RODRIGUEZ and other known and unknown individuals. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

**JURISDICTION**

11.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

12.    Since May 2024, the Drug Enforcement Administration (DEA) has been conducting an investigation involving Miguel RODRIGUEZ (DOB: XX/XX/2001) and other known and unknown individuals, who are believed to be members of a Milwaukee-area based Drug Trafficking Investigation (DTO) engaged in the distribution of Methamphetamine.

**A.    Background**

13.    In July 2024, an Undercover (UC) Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) was contacted by a Hispanic male later positively identified as Miguel RODRIGUEZ. At the time, RODRIGUEZ was utilizing telephone number 414-349-6360. In sum, according to the UC, during the initial phone contact between the UC and RODRIGUEZ, RODRIGUEZ confirmed to the UC that RODRIGUEZ could provide pound quantities of methamphetamine to the UC.

5

14.     Based on my training and experience, I know that a "controlled buy" is a law enforcement operation in which an informant, or in this instance, an undercover agent, purchases drugs from a target at the direction of law enforcement. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a CS is used, she/he is searched for contraband, weapons, and money before the operation. The CS is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the CS meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents.   The CS is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction.   A sample of the suspected drugs is then field tested by the case agents for the presumptive presence of controlled substances and then placed in inventory pursuant to normal inventory procedures.   Often, the calls to the target by the CS are consensually recorded calls under the direction and control of case agents and/or made in the presence of case agents. In this case, the UC made covert video/audio recordings of the two controlled buys involving RODRIGUEZ.

15.     On August 6, 2024, the UC was in phone contact with RODRIGUEZ who was still using telephone number 414-349-6360.  In sum, according to the UC, RODRIGUEZ and the UC agreed to meet the following day at a location in the City of Milwaukee, Wisconsin and RODRIGUEZ agreed to supply the UC with one pound of methamphetamine.

16.     On August 7, 2024, the UC met with case agents at a predetermined location and was provided with an amount of money in DEA Official Advanced Funds (OAF) to make the purchase and was equipped with a covert audio/video recording device.  Prior to the UC leaving the predetermined location, surveillance units were dispatched to the area where RODRIGUEZ and the UC had agreed to meet.

6

17. RODRIGUEZ had previously communicated to the UC that RODRIGUEZ would be driving a silver Infiniti. At some point after the UC parked at the meeting location, surveillance units in the area observed a silver Infiniti sedan with heavy front-end damage park in the area of the UC's undercover vehicle. Around the same time the Infiniti was observed parking, surveillance units also observed a dark gray Chrysler 300 park directly behind the Infiniti. A Hispanic male, later positively identified as RODRIGUEZ, was observed exiting the rear passenger side door of the Infiniti, then walking to and entering the passenger seat of the UC vehicle. RODRIGUEZ was then observed exiting the UC vehicle and walking to the Chrysler 300 that had pulled up. RODRIGUEZ could be seen talking with the occupant(s) of the Chrysler through the open passenger side window for a few moments before walking back to the UC vehicle. Once RODRIGUEZ was back inside the UC vehicle, case agents monitoring the audio being transmitted from the UC vehicle could overhear that the deal had been done.

18. After the deal, RODRIGUEZ was observed exiting the UC vehicle and again walking back to the Chrysler which was still parked behind the Infiniti that RODRIGUEZ had arrived in. RODRIGUEZ was observed entering the rear passenger side seat of the Chrysler, where he remained for a few minutes. As RODRIGUEZ entered the Chrysler, the UC departed the area. Once RODRIGUEZ exited the Chrysler, the Chrysler departed the area and RODRIGUEZ entered the rear of the Infiniti and the Infiniti departed the area. Surveillance was terminated on RODRIGUEZ at this time.

19. Subsequent to the transaction, the UC again met with case agents at a predetermined location and handed over a gallon size Ziplock baggie that contained a crystalized substance that appeared to be methamphetamine. The suspected methamphetamine was subjected to a field test where it yielded positive results for the presence of methamphetamine. The suspected

methamphetamine weighed approximately one pound. The UC stated that the UC provided the pre-recorded buy money to RODRIGUEZ while inside the UC's vehicle and RODRIGUEZ provided the UC with the baggie containing the suspected crystal methamphetamine. The UC identified a photograph of RODRIGUEZ as the person who provided the UC with this methamphetamine.

20.    On August 21, 2024, the UC again had contact with RODRIGUEZ who was still utilizing telephone number 414-349-6360. In sum, according to the UC, RODRIGUEZ and the UC agreed to meet the following day at a location in the City of Milwaukee, Wisconsin and RODRIGUEZ had agreed to supply the UC with one pound of methamphetamine and one Glock 19X handgun.

21.    On August 22, 2024, the UC met with case agents at a predetermined location and was provided with an amount of money in DEA Official Advanced Funds (OAF) to make the purchase and was equipped with a covert audio/video recording device. Prior to the UC leaving the predetermined location, surveillance units were dispatched to the area where RODRIGUEZ and the UC had agreed to meet.

22.    The UC arrived and parked the UC vehicle in the agreed upon meeting location. Shortly after the UC parked, a Hispanic male (later positively identified as RODRIGUEZ) was observed walking towards the UC vehicle and entering the front passenger seat. Surveillance units did not observe where RODRIGUEZ had walked from. According to the UC, once in the UC vehicle, RODRIGUEZ completed the transaction with the UC for the handgun, but informed the UC that he did not currently have the methamphetamine and they would need to travel to go pick it up. A short time later, the UC vehicle was observed departing the area with RODRIGUEZ still inside. Ultimately, the UC vehicle was observed parking at another location in the City of

8

Milwaukee where RODRIGUEZ was observed exiting the UC vehicle and entering a black Ford F-250, Wisconsin Plate VE-8307. RODRIGUEZ was observed entering the passenger side of the F-250, where he remained for approximately one minute and then was observed exiting the F-250 and walking back to the UC vehicle. RODRIGUEZ again entered the UC vehicle for just a moment before exiting. Case agents monitoring the audio being transmitted from the UC vehicle could overhear that the deal had been done and the UC was observed departing the area. Surveillance was terminated on RODRIGUEZ at this time, as the UC had left RODRIGUEZ in the area where the deal had happened.

23.     Subsequent to the transaction, the UC again met with case agents at a predetermined location and handed over a clear heat-sealed bag that contained a crystalized substance that appeared to be methamphetamine. The suspected methamphetamine was subjected to a field test where it yielded positive results for the presence of methamphetamine. The suspected methamphetamine weighed approximately one pound. The UC also handed over the handgun that had been purchased from RODRIGUEZ which was turned over to ATF case agents for storage and safekeeping. The UC stated that the UC provided the pre-recorded buy money to RODRIGUEZ while inside the UC's vehicle and RODRIGUEZ provided the UC with the firearm. The UC stated that the UC then drove RODRIGUEZ to the secondary location, where RODRIGUEZ exited the UC vehicle, then returned and provided the UC with the baggie containing the suspected crystal methamphetamine. The UC identified a photograph of RODRIGUEZ as the person who provided the UC with this methamphetamine and the firearm.

24.     On August 26, 2024, the UC was contacted by RODRIGUEZ who was now utilizing telephone number 262-583-8168 (**Target Number**). The UC identified the voice of the person calling from the Target Number as RODRIGUEZ based on their prior conversations and

9

meetings. In sum, according to the UC, RODRIGUEZ indicated to the UC that RODRIGUEZ currently had a pound of methamphetamine ready for sale and also stated to the UC that RODRIGUEZ was working on acquiring firearms, specifically "switches," which case agents understand to be machine gun conversion devices that render Glock handguns to be fully automatic.

25.     On September 10, 2024, RODRIGUEZ again contacted the UC from the **Target Number via** text message. In sum, according to the UC, RODRIGUEZ communicated to the UC that RODRIGUEZ currently had one pound of methamphetamine ready to go if the UC was interested. Specifically, the user of the **Target Number** (believed to be RODRIGUEZ) messaged the UC, "I got one for 32 lmk." Based on my training and experience, as well as the overall investigation, I believe this message involved RODRIGUEZ offering the UC one pound of methamphetamine for $3,200. Further, I believe that "lmk" is short for "let me know," meaning that RODRIGUEZ is asking the UC to tell RODRIGUEZ whether the UC wants the pound for that price. Further, the user of the **Target Number** (believed to be RODRIGUEZ) messaged the UC, "coo bro ill save you one, you gone want another toy." Based on my training and experience, as well the overall investigation, I believe this message was RODRIGUEZ agreeing to hold one pound of methamphetamine for the UC and asking the UC if the UC wanted another firearm ("toy"). As noted above, during a prior controlled buy, RODRIGUEZ sold the UC a Glock firearm and, in context, I believe that RODRIGUEZ is asking whether the UC wants a second firearm ("another toy").

26.     As of today's date, the UC and RODRIGUEZ have not negotiated a specific day to meet regarding this purchase, but case agents will likely conduct another controlled purchase of methamphetamine from RODRIGUEZ in the near future.

27. Based upon the two controlled buys, I know that RODRIGUEZ has access to pound quantities of methamphetamine because he has distributed two pounds to the UC within the past 60 days. Therefore, when RODRIGUEZ contacted the UC using the **Target Number**, in sum, to inform the UC that RODRIGUEZ is currently in possession of additional methamphetamine, I believe RODRIGUEZ's representations to be reliable. As such, I believe that RODRIGUEZ is using the **Target Number** to facilitate a forthcoming drug deal and that the requested historical and real time data will be essential in determining where RODRIGUEZ is storing and acquiring the drugs for distribution and identifying those with whom RODRIGUEZ communicates concerning his drug trafficking.

28. Case agents subpoenaed T-Mobile records in an attempt to identify the listed subscriber for the **Target Number**, but to date, the subscriber's name is unknown. The return from T-Mobile did not list any subscriber name.

## TECHNICAL BACKGROUND

29. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device

does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

30.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Number**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## E-911 Phase II / GPS Location Data

31.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest

12

to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Number**, including by initiating a signal to determine the location of the **Target Number** on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

32.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

33.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless

13

providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Number** user or users and may assist in the identification of co-conspirators.

<u>**AUTHORIZATION REQUEST**</u>

34. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

35. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

36. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Number** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

37. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until August 30, 2025, pursuant to the Omnibus Order signed by Honorable Magistrate Judge Stephen

14

C. Dries on August 30, 2024 (App. No. 16379). This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. This investigation targets a sophisticated drug trafficking organization with multiple targets, subjects, and witnesses. Case agents will continue to request the same notification deadline for all warrants in this investigation, so that the notifications can be coordinated or extended as necessary. A single notification date will reduce the administrative burden on case agents and the Court, minimize the risks of disclosure, and promote judicial economy. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Number** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

38.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Number** outside of daytime hours.

15

## ATTACHMENT A

**Property to Be Searched**
**Matter No. 2024R0312**

1.      Records and information associated with the cellular device assigned **262-583-8168** (referred to herein and in Attachment B as "**Target Number**"), that is in the custody or control of T-MOBILE (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan, Parsippany, NJ 07054, with no known listed subscriber.

2.      The device bearing the **Target Number.**

**ATTACHMENT B**

**Particular Things to be Seized**
**Matter No. 2024R0312**

**I.     Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Number** for the time period from August 26, 2024, to present:

       i.   Names (including subscriber names, usernames, and screen names);

      ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

     iii.   Local and long-distance telephone connection records;

     iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.   Length of service (including start date) and types of service utilized;

     vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

17

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Number**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Number** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

18

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Number** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Number**.

c. Information about the location of the **Target Number** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Number** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

19

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving Miguel RODRIGUEZ and other known and unknown individuals and other unidentified subject(s) since May 1, 2024.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Case 2:24-mj-00904-NJ     Filed 09/13/24     Page 28 of 28     Document 1